## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 09-20588-Civ-MORENO/TORRES

ELANDIA INTERNATIONAL, INC.,

        Plaintiff,

vs.

JAMES AH KOY, *et al.*,

        Defendants

_____/

## REPORT AND RECOMMENDATION ON MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

      This matter comes before the Court on Defendants Sir James Ah Koy, Michael Ah Koy, Kelton Investments Ltd., and Datec Group Ltd.'s ("Defendants") Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rules of Civil Procedure 12(b)(2) [D.E. 17] (hereinafter "Motion").   Plaintiff eLandia International Inc. ("eLandia") has filed a Memorandum of Law in Opposition to Defendants' Motion [D.E. 26] (hereinafter "Opposition"). Defendants have filed a Reply to Plaintiff's Opposition. [D.E. 28] (hereinafter "Reply").   For the following reasons, Defendants' Motion should be Denied.

# I.  BACKGROUND

## A.    *Procedural Background*

On March 17, 2009, Plaintiff eLandia filed an Amended Complaint against Defendants in the Southern District of Florida after Defendants allegedly filed litigation in Fiji and blocked Plaintiff's sale of Plaintiff's asset. Plaintiff alleges the following: (1) Defendant James Ah Koy committed breach of fiduciary duty, conspiracy to breach fiduciary duty, breach of implied covenant of good faith and fair dealing, and tortious interference; (2) Defendant Michael Ah Koy committed aiding and abetting breach of fiduciary duty, conspiracy to breach fiduciary duty, breach of implied covenant of good faith and fair dealing, tortious interference, and breach of contract; (3) Defendant Datec Group Ltd. ("Datec Group") committed aiding and abetting breach of fiduciary duty, conspiracy to breach fiduciary duty, and tortious interference; and (4) Defendant Kelton Investments Ltd. ("Kelton") committed aiding and abetting breach of fiduciary duty, conspiracy to breach fiduciary duty, breach of the implied covenant of good faith and fair dealing, and tortious interference.[1]

Defendants filed this Motion on April 17, 2009. [D.E. 17].  Defendants allege that the Southern District of Florida cannot exert jurisdiction over Defendants because Plaintiff's claim does not meet the jurisdictional requirements of Florida's long-arm statute or constitutional due process. [*Id.*].  The personal jurisdiction issue was also the first argument raised in opposition to eLandia's motion for preliminary injunction,

---

[1] Plaintiffs filed their original Complaint on March 3, 2009.

which motion seeks an anti-suit injunction precluding Defendants from pursuing litigation in Fiji that arises or relates to their agreements. [D.E. 11].

Plaintiff filed its Opposition on May 6, 2009, claiming that jurisdiction is proper because Defendants' activity satisfies Florida long-arm statutes §§ 685.101-02 and §§ 48.193(1)(a), (1)(b) and due process requirements. [D.E. 26 at 12-18]. Defendants filed a reply on May 18, 2009. [D.E. 28].

We ordered the parties to file supplemental briefing by June 24, 2009 regarding the relevance of the Florida Third District Court of Appeals decision that found that a forum selection clause alone could confer personal jurisdiction on a Florida court under §§ 685.101-02. [D.E. 38]. The parties filed their supplemental briefs on June 24, 2009. [D.E. 44, 45].

We held a hearing on July 7, 2009. The record on the pending motion is thus complete.  The parties stipulated that no evidentiary hearing was necessary, and we find that none is necessary given the lack of disputed material facts relevant to the jurisdiction issue.

### B. *Facts Material to the Motion*

#### 1. *Parties*

Plaintiff eLandia is a corporation organized under the laws of Delaware with its principal place of business in Coral Gables, Florida. [D.E. 12-2 at 1].  eLandia provides information technology services to businesses and government entities located in the South Pacific through several subsidiaries located in that region. [*Id.*].  Stanford International Bank ("Stanford") is a banking corporation that is not a party to this

action.  Until February 2009, Stanford was a major shareholder of Plaintiff eLandia and principle source of Plaintiff eLandia's financing for operations. [D.E. 4 at 4].

Defendant James Ah Koy is a citizen of Suva Fiji, but resides in Beijing, China. [D.E. 17 at 3]. Defendant Michael Ah Koy is a citizen and resident of Mairangi Bay, Auckland, New Zealand. [D.E. 4 at 3].  Defendant Kelton is an investment holding company. [D.E. 17 at 4].  Kelton's principal place of business and place of incorporation is located in Fiji. [D.E. 4 at 3].  Michael Ah Koy is a shareholder and chairman of Kelton.  Defendant James Ah Koy controls Kelton. [D.E. 22-2 at 2].  None of Kelton's shareholders or directors reside in Florida. [D.E. 17 at 4].  Kelton does not conduct business in Florida, is not licensed to do business in Florida, has never owned or leased any real or personal property in Florida, and has never maintained a depository or bank account in Florida. [*Id.*].

Defendant Datec Group's principal place of business and place of incorporation is located in Canada. [D.E. 4 at 3].  Kelton held 30% of Datec Group's outstanding common stock. [D.E. 22-2 at 2].  Michael Ah Koy was the chief executive officer of Datec Group until 2004. [*Id.*].  James Ah Koy was the director and founder of Datec Group. [D.E. 4 at 3, 6].  James Ah Koy and Michael Ah Koy control Datec Group, either directly or indirectly. [*Id.* at 3].  Datec Group was an information technology company that provided services to the South Pacific markets. [D.E. 22-2 at 2].  Before February 1, 2006, Datec Group conducted its operations under the following wholly-owned subsidiaries: (1) Generic Technology Ltd. ("Generic"), a Fiji registered company; and (2) Datec Investments Ltd., a New Zealand registered company. [D.E. 17 at 3].  Generic

4

owns Datec PNG Pty Ltd ("Datec PNG"), a company which is registered in Papua New Guinea.[2,3] [*Id.* at 3].

Datec Group maintains its business records in Edmonton, Canada and Auckland, New Zealand. [*Id.* at 4]. Datec Group has never directly conducted business in Florida, has never been licensed to do business in Florida, has never been registered with the Florida Secretary of State to transact business in Florida, has never owned or leased any real or personal property in Florida, and has never maintained a depository or bank account in Florida. [*Id.* at 4].

## 2. *Arrangement Agreement*

Plaintiff eLandia, Defendant James Ah Koy, Defendant Michael Ah Koy, and several Datec Group representatives attended a two-day meeting in Florida to begin negotiations in the summer of 2005 to merge the assets of eLandia and Datec Group. [D.E. 17 at 5]. Michael Ah Koy and other representatives of Datec Group directed e-mail and telephone communications to eLandia's office in Florida during the merger negotiations. [D.E. 22-2 at 3]. During the negotiations eLandia agreed to devote

---

[2]Generic also owns (1) Datec Fiji Ltd., a company registered in Fiji; (2) Network Services Ltd., a company registered in Fiji; (3) Pacific Software Ltd., a company registered in Fiji; and, (4) Datec Qld Pty Ltd., a company registered in Australia. Datec Investments Ltd. owns the following subsidiaries: (1) Datec Samoa Ltd., a company registered in Samoa; (2) Datec Tonga Ltd., a company registered in the Kingdom of Tonga; (3) Datec Vanuatu Ltd., a company registered in Vanuatu; (4) Datec Solomon Islands Ltd., a company registered in the Solomon Islands; and (5) Datec Australia Ltd., a company registered in Australia.

[3]Steamships, a nonparty to this litigation that is not related to eLandia, owned 50% of Datec (PNG). [D.E. 4 at 4].

capital to the Datec Group subsidiaries, which would help both parties develop opportunities in the South Pacific telecommunications market. [D.E. 17 at 5].

Consequently, eLandia entered into an Amended and Restated Arrangement Agreement ("Arrangement Agreement") with Defendants Datec Group, James Ah Koy, Michael Ah Koy, and Kelton on or about August 8, 2005. [D.E. 26 at 8]. eLandia exchanged 31% of its issued and voting share capital for all of Datec Group's operating subsidiaries, specifically Generic Technology Limited ("Generic") and Datec PNG. [D.E. 17 at 5]. The Arrangement Agreement was governed by Canadian law and subject to the approval of the Canadian courts and Datec Group shareholders. [D.E. 4 at 7]. The value of the transaction was approximately $14.6 million [D.E. 22-2 at 4] and closed in Florida on or about February 1, 2006. [D.E. 26 at 9].

Datec Group became a shell corporation that lacked business and assets following the Arrangement Agreement. [D.E. 4 at 7]. Moreover, Canadian securities regulators prohibited trading in Datec Group's stock and the United States Securities and Exchange Commission revoked Datec Group's registration because Datec Group did not file the required reports. [*Id.*].

Following the Arrangement Agreement, James Ah Koy served as a director of eLandia from December 2005 until April 2009 [D.E. 22-2 at 4] and is currently a director of Generic and Datec PNG. [D.E. 12-2 at 3]. James Ah Koy did not have an office in Florida and conducted the majority of his duties from Fiji or China. [D.E. 17 at 5].

Shortly after closing the Arrangement Agreement, James Ah Koy claimed that eLandia did not provide the promised capital for the South Pacific Datec subsidiaries. [D.E. 22-2 at 5]. James Ah Koy made these complaints in several venues, including an eLandia Board meeting James Ah Koy attended in Florida. [D.E. 26 at 10].

### 3. *Defendant Michael Ah Koy's Contracts*

Defendant Michael Ah Koy served as Plaintiff eLandia's President of Business Development from February 2006 until July 2008. [D.E. 22-2 at 4].[4]  Michael Ah Koy managed and developed business opportunities in the information technology area in the South Pacific. [D.E. 17 at 6]. He did not have an office in Florida during this time period. [*Id.*]. Instead he conducted his duties from his office in Auckland, New Zealand. [*Id.*]. He visited Florida on five occasions while President of Business Development for eLandia. [*Id.*].

Michael Ah Koy was removed from his position as eLandia's President of Business Development via a Separation Agreement signed and dated July 19, 2008. [D.E. 5-5 at 3].  The parties designated a state court sitting in Miami-Dade County, the United States District Court for the Southern District of Florida, or any appellate courts which review decisions of those courts, as the appropriate fora to hear any disputes, claims, actions or lawsuits between the parties arising out of or relating to the Separation Agreement. [*Id.*].  Furthermore, Michael Ah Koy consented to release

---

[4] Michael Ah Koy also served as eLandia's interim CEO from July 2006 until late 2006. [D.E. 18 at 7].

7

and waive any and all employment related actions, suits, and claims that may exist against the Company. [*Id.*].

At the same time Michael Ah Koy was appointed as a director of eLandia's South Pacific subsidiaries Generic, Datec Investments Limited and Datec PNG on July 19, 2008. [D.E. 41-5]. He agreed to perform the following director duties under the Letter Agreement signed and dated July 19, 2008: (1) attend meetings of each Board; (2) serve on committees of the Boards, if applicable, and attend meetings of each committee of which you are a member; (3) use reasonable efforts to promote the business of the Subsidiaries; and (4) consult with the Company's management on all items requiring a vote of the directors of each Board and agree to vote in accordance therewith. [*Id.* at 2]. eLandia agreed to compensate Michael Ah Koy with 70,000 shares of eLandia common stock, $12,000 per year, and $1,000 per day for consulting or other services as requested by eLandia. [*Id.*].

The parties to this agreement also designated a state court sitting in Miami-Dade County, the United States District Court for the Southern District of Florida, or any appellate courts which review decisions of those courts, as the appropriate fora to hear any disputes, claims, actions or lawsuits between the parties arising out of or relating to the Letter Agreement. [*Id.* at 3].

### 4.   *Stock Purchase Agreements*

On April 30, 2008, Defendants James Ah Koy and Kelton sold a portion of their eLandia stock to Stanford for $2,372,424 [D.E. 5-2] under the James Ah Koy Stock Purchase Agreement. [D.E. 4 at 9]. On that same date, Michael Ah Koy also sold a

portion of his stock to Stanford for $22,498 [D.E. 5-3] under the Michael Ah Koy Stock Purchase Agreement.  [D.E. 4 at 9).  Both Stock Purchase Agreements state that "each Ah'Koy Party on behalf of himself or itself and all Affiliates hereby release and forever discharge each Company, Purchaser, its Affiliates and each of their respective officers, directors, managers . . . from any and all claims . . . ." [D.E. 5-2 at 7].  The Stock Purchase Agreements also state that "Affiliates" shall have the meaning ascribed to such term in Rule 12b-2 promulgated under the Securities Exchange Act of 1934. [*Id.*].

Both Stock Purchase Agreements also include a release of claims from the Defendants, which states in subpart 8(b):

> In addition to the foregoing release, each of the Ah Koy Party's rights against any Purchaser/Company Released Party under any and all agreements with Purchaser or Company, and each of the Purchaser/Company Released Parties' obligations to any Ah' Koy Party's ownership of Company Common Stock or otherwise, including, without limitation, that certain Amended and Restated Arrangement Agreement, dated as of August 8, 2005, to which Ah'Koy, Kelton Investments and Purchaser among others, are parties, shall automatically, and without the necessity of any further action, be terminated as of the Closing Date . . . .

[D.E. 5-2 at 7, 5-3 at 7].

In addition, both Stock Purchase Agreements contain a forum selection clause, which states in subpart 9(b):

> Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in Miami-Dade County, Florida for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any court, that such suit, action or proceeding is improper or inconvenient venue for such proceeding.

[D.E. 5-2 at 9, 5-3 at 9].

All of the discussions and negotiations that led to the signing of both Stock Purchase Agreements took place in Fiji and Beijing, China. [D.E. 17 at 7].  Michael Ah Koy signed his Stock Purchase Agreement in New Zealand and James Ah Koy signed his Stock Purchase Agreement in Beijing, China. [*Id.*].

### 5.   *Sale of Plaintiff eLandia's Interest in Datec PNG*

In January 2009, Stanford informed Plaintiff eLandia that it would no longer provide financing to eLandia, which violated a credit agreement between the parties. [D.E. 4 at 14].  Stanford claimed that it no longer had liquidity available to honor its commitment under the credit agreement. [*Id.* at 15].  Therefore, eLandia negotiated an agreement with Stanford that terminated Stanford's obligations under the credit agreement, converted eLandia's outstanding debt to Stanford to preferred stock, Stanford's ownership of eLandia's common stock would be reduced from approximately 80% to 49.9%, and all of Stanford's capital stock would be placed in a voting trust that eLandia's CEO would vote on at the CEO's discretion. [*Id.*].

Shortly thereafter, the SEC filed a complaint alleging that Stanford misrepresented the safety and liquidity of the underlying investments in certificates of deposits that Stanford fraudulently sold. [*Id.*].  Stanford had been eLandia's principal lender, thus eLandia sought to sell a portion of its assets to gain additional liquidity. [*Id.* at 15-16].  Michael Ah Koy told eLandia's representatives that he knew a group of companies that was interested in forming a consortium to acquire some of

10

eLandia's assets. [*Id.* at 14]. eLandia agreed to pay Michael Ah Koy a fee to facilitate the sale for a period of six months. [*Id.*]. eLandia reserved the right to sell its assets to any other buyer, in which case Michael Ah Koy would not receive a fee. [*Id.* at 4].

In February 2009, Plaintiff eLandia negotiated an offer to sell its 50% interest in Datec PNG to Steamships for approximately $7.5 million cash. [*Id.* at 16]. eLandia's Board of Directors considered and approved the proposed sale to Steamships. [*Id.*]. James Ah Koy did not attend this meeting, but eLandia's CEO informed James Ah Koy about the pending transaction and asked him to execute a release and resignation from Datec PNG's Board to allow the closing to proceed. [*Id.* at 17].

On February 16, 2009, Michael Ah Koy sent an e-mail to eLandia's CEO, proposing to purchase Generic Technology and Datec Australia Ltd for $10,000,000. [*Id.* at 18]. 6,352,000 of the consideration was to be paid in eLandia stock, $500,000 cash would be paid at closing, $1,000,000 to be paid 90 days after closing, and $2.148 million to be paid 180 days after that. [*Id.* at 19]. eLandia rejected the offer. [*Id.*]. On the same day, James Ah Koy also e-mailed eLandia's CEO stating that he would have to put a halt on the transaction with Steamships by refusing to execute the necessary closing documents. [*Id.* at 18].

Steamships and eLandia planned on closing the sale of eLandia's interest in Datec PNG. [D.E. 26 at 8] at a Datec PNG board meeting in Papua, New Guinea on February 17, 2009. [D.E. 17 at 8]. On February 17, 2009, Michael Ah Koy told a Steamships representative that he intended to block eLandia's transaction with

Steamships. [D.E. 4 at 19].  Michael Ah Koy's conversation with the Steamships representative occurred in Papua, New Guinea. [D.E. 17 at 8].  Consequently, Steamships refused to close the transaction. [D.E. 4 at 19].

On February 22, 2009, James Ah Koy sent an e-mail to eLandia's CEO that stated that he would testify before the SEC, FBI, and US Receiver regarding the CEO's alleged knowledge of Stanford's fraud. [*Id.* at 20].  James Ah Koy also sent an e-mail to a member of eLandia's Board on February 28, 2009 that stated:

> [P]lease be careful, guard your reputation; you don't want to lose it at the 11th hour of your working life and retire into shame and ignominy. Pete [eLandia's CEO] must have been told about this meeting . . and therefore rushed with the concurrence of the Stanford executives who were told of the fraud to obtain a fairness report in all haste to justify the drop in Stanford shares in eLandia. I want you to know that I will have no hesitation in talking to the US Government Receiver if I am questioned.

[*Id.* at 21].

### 6.  *Fiji Litigation*

On February 24, 2009, Kelton and Datec Group filed an Ex-Parte Notice of Motion for Interim Injunction in Fiji ("Fiji Litigation") seeking to: (1) block Plaintiff eLandia from appointing new directors or removing existing directors from the Board of Generic and its subsidiaries, including Datec PNG; and (2) prevent eLandia from selling its shares in Generic and/or in any of its subsidiaries. [D.E. 18 at 24].  The motion alleges breach of contract and equitable estoppel based upon eLandia's conduct connected to the Arrangement Agreement. [*Id.*].

Following the initiation of this litigation in Fiji, eLandia brought this action in part to first seek an anti-suit injunction barring the Defendants from pursuing or

prosecuting this Fiji litigation. [D.E. 11].  Defendants responded to the motion for preliminary injunction [D.E. 22] arguing initially that no injunctive relief should issue because the Defendants are not subject to personal jurisdiction in the Southern District of Florida.  Defendants followed up that argument with a separate motion to dismiss [D.E. 17] under Rule 12(b) seeking dismissal of the action for lack of personal jurisdiction.

## II.   ANALYSIS - FLORIDA LONG-ARM STATUTE

Defendants first allege that the Southern District of Florida cannot exert jurisdiction over Defendants because Plaintiff's claims do not meet the jurisdictional requirements of Florida's long-arm statute. [D.E. 17].  Plaintiff responds that personal jurisdiction exists under Florida long-arm statutes §§ 685.101-02 and §§ 48.193(1)(a), (1)(b). [D.E. 26 at 12-17].

### A.   *Legal Standard*

In a diversity action, a federal court can exercise personal jurisdiction over a non-resident defendant as permitted by the long-arm statute of the forum state.  *E.g., Rexam Airspray, Inc. v. Arminak*, 471 F. Supp. 2d 1292, 1297-98 (S.D. Fla. 2007). Courts strictly interpret Florida long-arm statute § 48.193; therefore, the party invoking jurisdiction has the burden of proving that personal jurisdiction exists. *Id.* at 1298.  A plaintiff must present enough evidence to withstand a motion for a directed verdict to make a prima facie showing that personal jurisdiction exists. *Id.*; *see, e.g., Polskie Linie Oceaniczne v. Seasafe Transport A/S,* 795 F.2d 968, 972 (11th Cir. 1986).

13

The defendant must challenge the plaintiff's allegations of personal jurisdiction by pleadings or declarations if the plaintiff pleads sufficient facts to make a prima facie case that personal jurisdiction exists. *See, e.g., Internet Solutions Corp. v. Marshall,* 557 F.3d 1293, 1296 (11th Cir. 2009); *Rexam,* 471 F. Supp. 2d at 1298. Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings. *E.g., Polskie,* 795 F.2d at 972.

If the defendant successfully challenges the plaintiff's claims, then the plaintiff must support its jurisdictional allegations with evidence rather than relying on the factual allegations in the complaint. *E.g., Internet Solutions Corp.,* 557 F.3d at 1296; *see also Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1215 (11th Cir. 1999); *Rexam,* 471 F. Supp. 2d at 1298. But where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. *See, e.g., Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted). Similarly, on a motion to dismiss the court must find any uncontroverted facts alleged in the plaintiff's complaint to be true. *See Coca-Cola Foods v. Empresa Comercial Internacional de Frutas S.A.*, 941 F. Supp. 1175, 1178 (M.D. Fla. 1996).

Based on this burden-shifting framework, a defendant is entitled to an order granting defendant's motion to dismiss if the court finds that the court lacks personal jurisdiction over the defendant. *E.g., Posner,* 178 F.3d at 1214 n.6. If necessary, the

14

court may make factual findings so long as the factual disputes do not decide the merits and the parties have a sufficient opportunity to develop the record. *See Bryant v. Rich,* 530 F.3d 1368, 1376 (11th Cir. 2008).

### B.   *Plaintiff's Tort Claims are Cognizable Under Section 48.193(1)(b)*

Defendants claim that this Court lacks personal jurisdiction over Plaintiff's tort claims alleged in the complaint, for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conspiracy to breach fiduciary duty, and tortious interference, because the alleged torts did not occur in the state of Florida. [D.E. 17 at 15-17]. Defendants also claim that the corporate shield doctrine protects Defendants James Ah Koy and Michael Ah Koy from personal jurisdiction because James Ah Koy and Michael Ah Koy were acting in their capacities as directors or officers of Datec Group, Datec PNG, Generic, or eLandia. [*Id.*].   Plaintiff responds that we have jurisdiction over the tort claims because the harm, Plaintiff's loss of $7.5 million and decrease in the value of Plaintiff's holdings in Datec PNG [D.E. 4 at 22], occurred in Florida. [D.E. 26 at 20-21].   Plaintiff also argues that the corporate shield doctrine does not protect Defendants from liability for intentional torts. [*Id.*].

We analyze Plaintiff's claims of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conspiracy to breach fiduciary duty, and tortious interference under Florida long arm statute § 48.193(1)(b).   *See Allerton v. State Dep't of Ins.*, 635 So. 2d 36, 39 (Fla. Dist. Ct. App. 1994) (classifying breach of fiduciary duty, aiding and

15

abetting breach of fiduciary duty, and conspiracy as intentional torts subject to § 48.193(1)(b).

Florida long-arm statute § 48.193(1)(b) provides:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself, and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action from the doing of any of the following acts: . . . (b) Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(b).

As construction of Florida's long arm statute is a question of Florida law, we must analyze the statute according to Florida Supreme Court precedent. *See, e.g., United Tech. Corp. v. Mazer,* 556 F.3d 1260, 1274-75 (11th Cir. 2009); *Rexam*, 471 F. Supp. 2d at 1298. If such precedent is not directly on point, "[f]ederal courts applying state law are bound by the decisions of the state's intermediate appellate courts 'absent some persuasive indication that the state's highest court would decide the issue otherwise.'" *Stateline Power Corp. v. Kremer*, 404 F. Supp. 2d 1373, 1377-78 (S.D. Fla. 2005) (quoting *Silverberg v. Paine, Webber, Jackson, & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983)); *see also United Tech.,* 556 F.3d at 1275 (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1271 (11th Cir. 2002)).

Some Florida intermediate appellate courts have interpreted section 1(b) narrowly and found that there is no jurisdiction over someone that commits a tortious act outside the state that results in injury inside the state. Other Florida district

16

courts have reached the opposite conclusion and found jurisdiction under a broader interpretation of section 1(b). *See Posner*, 178 F.3d at 1216. The Florida Supreme Court has not squarely reconciled the conflicting decisions from the district courts of appeal. *Id.* at 1216-17.

Defendants urge us to adopt the narrow interpretation of section 1(b) and deny personal jurisdiction over the Defendants because the alleged torts did not occur in the state of Florida. [D.E. 17 at 15]. However, Defendants ignore the weight of the authority that we are bound to follow. The Eleventh Circuit has consistently applied the broader construction of subsection 1(b) and found personal jurisdiction over someone who commits a tortious act outside the state that results in harm inside the state. *Id.* at 1216 (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 257 (11th Cir. 1996); *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1033-34 (11th Cir. 1991)). We are bound to follow the Eleventh Circuit's well established line of cases that apply the broader construction of subsection 1(b) because the Florida Supreme Court has not issued a decision rejecting the Eleventh Circuit's interpretation. *See Posner*, 178 F.3d at 1217.

Therefore, under the Eleventh Circuit's construction of the elements required for jurisdiction under section 48.193(1)(b), this statute permits jurisdiction over a non-resident defendant who commits a tort outside of the state that causes injury inside the state. *See also Licciardello v. Lovelady,* 544 F.3d 1280, 1283 (11th Cir. 2008) (citing *Posner,* 178 F.3d at 1216). Personal jurisdiction may also attach under this

17

"tortious activity" provision if a plaintiff can demonstrate that the non-resident defendant "committed a substantial aspect of the alleged tort in Florida" by establishing that the activities in Florida were "essential to the success of the tort." *Cable/Home Commc'n Corp. v. Network Prod.,* 902 F.2d 829, 857 (11th Cir. 1990) (quoting *Williams Electric Co. v. Honeywell, Inc.,* 854 F.2d 389, 394 (11th Cir. 1988)). Physical presence of the defendant in Florida is thus not required in all instances. *See, e.g., Wendt v. Horowitz,* 822 So. 2d 1252, 1260 (Fla. 2002). For instance, a foreign defendant can commit a tortious act in Florida "through telephonic, electronic, or written communications into Florida" so long as the cause of action arises from these communications. *Id.* at 1260. However, the place of injury must be within Florida. *Licciardello,* 544 F.3d at 1283; *see, e.g., Hollingsworth v. Iwerks Entm't, Inc.,* 947 F. Supp. 473, 477 (M.D. Fla. 1996); *L.O.T.I. Group Prod. v. Lund,* 907 F.Supp. 1528, 1532 (S.D. Fla. 1995).

### 1. *Breach of Fiduciary Duty*

A director of a company acts in a fiduciary relationship with the company and must exercise diligence and good faith to protect the interests of the company. *See Invo Fla. Inc. v. Somerset Venturer, Inc.*, 751 So. 2d 1263, 1267 (Fla. Dist. Ct. App. 2000). If an individual breaches a fiduciary duty to a company that has a principal place of business or place of incorporation in Florida the individual is subject to jurisdiction in Florida under long-arm statute § 48.193(1)(b)). *See Stateline Power,* 404 F. Supp. 2d at 1378 (finding that a company suffers injury from an individual's breach of fiduciary

18

duty wherever the company's principal place of business or place of incorporation is located).

Plaintiff eLandia alleges that Defendant James Ah Koy breached his fiduciary duty as a Director of eLandia because James Ah Koy wanted to purchase Datec PNG with non-liquid assets for his own personal gain.  eLandia claims that James Ah Koy did not act in eLandia's best interest because he blocked the sale of Datec PNG to Steamships for $7.5 million cash even though he knew that eLandia faced liquidity problems.  [D.E. 4 at 16-19].  eLandia also contends that James Ah Koy tried to further frustrate eLandia's sale of Datec PNG to Steamships by stating that he would tell the SEC, FBI, and US Receiver that eLandia was involved in fraud with Stanford.  [*Id.* at 20].

We find that eLandia has sufficiently alleged that James Ah Koy breached a fiduciary duty to eLandia.  *See, e.g., Stateline Power*, 404 F. Supp. 2d at 1378 (stating that plaintiff pled breach of fiduciary duty by alleging defendant, the president of plaintiff's company, misappropriated funds).  On the face of the complaint and on this record there is a prima facie basis to conclude that Defendant James Ah Koy committed a tort that caused eLandia, a company with a principal place of business in Florida, to suffer harm in the state of Florida.  Thus, even assuming as James Ah Koy maintains that any tortious conduct he committed occurred outside the state of Florida, Plaintiff's claim of breach of fiduciary duty satisfies the Florida long-arm statute, section 48.193(1)(b).  *See Posner*, 178 F.3d at 1216-17.  After all, the fiduciary duties he owed were owed to a Florida corporation.  Florida jurisdiction clearly attaches.

19

## 2.  *Conspiracy to Breach Fiduciary Duty*

Florida courts apply the co-conspirator rules used in criminal conspiracies to civil conspiracies. *See Wilcox v. Stout*, 637 So. 2d 335, 337 (Fla. Dist. Ct. App. 1994). If an individual successfully alleges that any member of a conspiracy committed tortious acts in Florida in furtherance of the conspiracy, then all of the conspirators are subject to personal jurisdiction in Florida. *See Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1169 (11th Cir. 2005).

Plaintiff eLandia alleges that Defendant Michael Ah Koy conspired to breach James Ah Koy's fiduciary duties [D.E. 4 at 24-25] because Michael Ah Koy told a Steamships representative that he also intended to block the transaction. [*Id.* at 19]. eLandia also contends that Defendants Datec Group and Kelton also conspired to breach James Ah Koy's fiduciary duties [*Id.* at 24-25] because Datec Group and Kelton filed the Fiji Litigation to prevent eLandia from selling its shares in Datec PNG. [D.E. 18 at 24].  Defendants fail to dispute the underlying factual allegations that the Defendants engaged in a conspiracy and merely argue that we cannot exert jurisdiction over them because the tortious acts did not happen in Florida.

We have determined that we have jurisdiction over the alleged principal act, Defendant James Ah Koy's breach of fiduciary duty.  Consequently, we must then conclude that we have jurisdiction over Defendants Michael Ah Koy, Kelton Investments, and Datec Group because Plaintiff has successfully alleged that these particular Defendants conspired with Defendant James Ah Koy to commit a tortious

act in Florida.  *See Wilcox*, 637 So. 2d at 336 (finding that appellant successfully alleged appellees committed a conspiracy for purposes of personal jurisdiction because appellees did not negate the allegations that appellees engaged in a conspiracy); *Machtinger v. Inertial Airline Servs., Inc.,* 937 So. 2d 730, 734-36 (Fla. Dist. Ct. App. 2006) (finding personal jurisdiction existed in Florida where conspiracy was made in Ohio but acts in furtherance of the conspiracy were done in and directed toward Florida); *see also Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.,* 752 So. 2d 582, 584-85 (Fla. 2000) (finding personal jurisdiction in Florida over participant in a nationwide price-fixing conspiracy in which some co-conspirators, but not the defendant at issue, made sales into Florida).

Again Florida jurisdiction should attach in this circumstance where these parties are alleged to have known full well that James Ah Koy was a Director of eLandia and owed fiduciary duties as a Director in Florida.  Based on the prima facie allegations in the complaint, these other Defendants intentionally conspired with James Ah Koy to violate his fiduciary duties owed in Florida.  Section 48.193(1)(b) clearly applies to that situation.

### 3.  *Aiding and Abetting Breach of Fiduciary Duty*

An individual commits the intentional tort of aiding and abetting a breach of fiduciary duty if: (1) the primary wrongdoer owes a fiduciary duty to the company; (2) the primary wrongdoer breaches her fiduciary duty; (3) the alleged aider and abettor has knowledge of this breach; and (4) the aider and abettor substantially assisted or encouraged the wrongdoing.  *E.g., In re Caribbean K Line, Ltd.*, 288 B.R. 908, 919 (S.D.

Fla. 2002).  If an individual commits an act that aids and abets a breach of fiduciary duty outside of Florida that causes harm to a company located in Florida, the individual is subject to personal jurisdiction under the Florida long-arm statute. *See Allerton*, 635 So. 2d at 39-40.

Plaintiff eLandia alleges that: Defendant James Ah Koy owed eLandia a fiduciary duty; James Ah Koy breached his fiduciary duty; Defendants Michael Ah Koy, Kelton Investments, and Datec Group knew that James Ah Koy breached his fiduciary duty; and Michael Ah Koy, Kelton Investments, and Datec Group all knowingly participated in James Ah Koy's breaches of fiduciary duty by preventing and interfering with eLandia's sale of its interest in Datec PNG. [D.E. 4 at 16-24].

For similar reasons as those discussed above for the civil conspiracy claim, these specific aiding and abetting allegations sufficiently plead a prima facie basis to hold Michael Ah Koy, Datec Group, and Kelton contributorily liable for James Ah Koy breach of his fiduciary duties that caused eLandia, a company with a principal place of business in Florida, to suffer harm in the state of Florida.  *See, e.g., Allerton*, 635 So. 2d at 39 (stating that plaintiff's allegation that defendants substantially assisted, contributed to, and furthered the accomplishment of breaches of fiduciary duty formed the basis for the count alleging aiding and abetting a breach of fiduciary duty). Thus, Plaintiff's claim of aiding and abetting breach of fiduciary duty satisfies the Florida long-arm statute.

### *4.   Tortious Interference with Business Relationship*

An individual commits tortious interference with business relations if the individual: (1) acted improperly; (2) acted maliciously with the intent to injure; (3) compelled a third party to refuse to enter into a business relationship with the plaintiff; and (4) caused plaintiff to suffer a financial injury.  *See, e.g., DeLong Equip. Co. v. Wash. Mills Abrasive Co.*, 887 F.2d 1499, 1519 (11th Cir. 1989) (internal citations omitted).  If an individual tortiously interferes with a business relationship outside of Florida that causes injury in Florida, the individual is subject to personal jurisdiction under the Florida long-arm statute.  *See Lehigh Tech., Inc. v. Farrah*, 2:08-cv-53-FtM-29SPC, 2009 WL 179672, at *5 (M.D. Fla. Jan. 23, 2009).

Plaintiff eLandia alleges that Steamships refused to purchase eLandia's shares in Datec PNG because Defendants intentionally and maliciously interfered with this business relationship. [D.E. 4 at 31].  eLandia also contends that it has suffered monetary damages because of Defendants' tortious conduct. [*Id.*].  These allegations are sufficient to show on a prima facie basis that Defendants all committed a tort that caused eLandia, a company with a principal place of business in Florida, to suffer harm in the state of Florida.  *See Lehigh Tech.*, 2009 WL 179672, at *5 (concluding plaintiff adequately alleged a claim of tortious interference by stating defendant sent defamatory and threatening letters to third parties in other states).  Thus, Plaintiff's claim of tortious interference satisfies section 48.193(1)(b) of the Florida long-arm statute.

### 5. *Corporate Shield Doctrine*

The corporate shield doctrine prohibits jurisdiction over an individual if the individual's only relevant contacts with the forum are acts performed for the benefit of the individual's employer. *See, e.g., Allerton*, 635 So. 2d at 39. A corporate officer, however, is subject to jurisdiction in the forum if the corporate officer commits intentional tortious acts aimed at the forum state. *See id.* Therefore, Defendants cannot use the corporate shield doctrine to protect them individually against Plaintiff's intentional tort claims of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conspiracy to breach fiduciary duty, and tortious interference. *See id.* (denying use of corporate shield doctrine against intentional torts of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy).

Defendants have cited to us no cases applying the corporate shield doctrine in the manner that they urge in this case. Indeed, all the cases they cite to us for application of this doctrine are clearly distinguishable cases, involving non-intentional negligence torts committed while acting within the scope of an agency or employment relationship. Those cases are illustrative, in fact, of what the doctrine was designed to do. None of them involved the type of intentional torts alleged here against individuals acting in both representative and non-representative capacities. For that reason, this argument designed to shield these Defendants from jurisdiction in this forum fails.

## C.    _Plaintiff's Contract Claim Falls Under § 48.193(1)(g)_

An individual is subject to personal jurisdiction under Florida long-arm statute § 48.193(1)(g) if the individual fails to perform acts in Florida required by a contract. Fla. Stat. § 48.193(1)(g) (2009).  Plaintiff eLandia alleges that Defendant Michael Ah Koy breached a contract because Michael Ah Koy refused to vote, via a written consent, in accordance with eLandia's management as required under the Letter Agreement. [D.E. 4 at 30].  eLandia claims that Michael Ah Koy agreed to consult with eLandia's management on all items requiring a vote of the directors of each Board and agreed to vote in accordance therewith under the Letter Agreement. [D.E. 41-5 at 2].  eLandia's management is located in Florida.  Thus, the Letter Agreement required Michael Ah Koy to perform acts in Florida, such as sending a written consent to Florida.

We find that Defendant Michael Ah Koy's alleged failure to submit the written consent to eLandia's management in Florida brings Michael Ah Koy within the ambit of § 48.193(1)(g).  _See, e.g., Future Tech. Today, Inc. v. OSF Healthcare Sys._, 218 F.3d 1247, 1250 (11th Cir. 2000) (finding defendant's breach of contract, failure to pay plaintiff in Florida of an amount due under a contract, satisfied Florida long-arm statute § 48.193(1)(g)).[5]

---

[5]      We recognize that the Amended Complaint did not cite this subsection of the Long-Arm statute by name as a basis to exercise jurisdiction.  Defendant Michael Ah Koy thus had justification to never address it.  The allegations of the contract count itself, however, clearly satisfy the factual pleading necessary to trigger the statute's application.  Thus, we will recommend denial of this motion but require, through a separate Order on a pending motion to amend the complaint, that this omission be corrected.

### D.    *Declaratory Judgment Claims*

Plaintiff eLandia claims that Defendants James Ah Koy and Kelton sold eLandia stock to eLandia and Stanford in exchange for cash, and released eLandia from all claims against eLandia under the James Ah Koy Stock Purchase Agreement. [D.E. 44 at 2].  Similarly, eLandia claims that Defendant Michael Ah Koy also sold eLandia stock to eLandia and Stanford in exchange for cash, and released eLandia from all claims against it under the Michael Ah Koy Stock Purchase Agreement. [*Id.*].

Plaintiff eLandia then claims that Defendants James Ah Koy, Kelton, Michael Ah Koy, and Datec Group violated the releases in the Stock Purchase Agreements by filing the Fiji Litigation. [D.E. 4 at 26].  It is further alleged that Defendants James Ah Koy and Michael Ah Koy could be liable for the filing of the Fiji Litigation if such litigation constituted a violation of the Stock Purchase Agreement releases, even though only Defendants Datec Group and Kelton filed the Fiji Litigation.[6]

---

[6] There is no specific doctrinal basis to determine when a principal is liable for the obligations of the corporations they control. *See Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 179 (5th Cir. 1981).  However, typically a controlling stockholder is liable for the debts of her "alter ego" if she uses the corporation as her personal business conduit. *See id.*  Here, eLandia claims that Defendants James Ah Koy and Michael Ah Koy operate Datec Group as a mere instrumentality and are liable for Datec Group's actions because: (1) Datec Group is controlled by James Ah Koy and Michael Ah Koy; (2) Datec Group is a shell corporation that lacks assets and cannot trade stock in the United States or Canada; and (3) James Ah Koy is the director and founder of Datec Group. *See id.*(considering whether a defendant has incorporated the company, common stock ownership as the company, common directors as the company, or gives the company its only business to determine if the company is merely a tool for defendant).

Based on these allegations eLandia's Amended Complaint seeks a declaratory judgment that any and all claims related to the Arrangement Agreement and negotiations were in fact released by the Defendants under the Stock Purchase Agreement. [D.E. 4 at 26]. eLandia argues that its declaratory judgment claims are subject to jurisdiction in Florida because the Stock Purchase Agreements contained a forum selection clause, which designated the United States District Court for the Southern District of Florida as the appropriate forum to adjudicate any disputes in connection with the Stock Purchase Agreement or with any *transaction* contemplated by the Stock Purchase Agreement or *discussed* in the Stock Purchase Agreement. [D.E. 26 at 10-11].

This Court has long-arm jurisdiction over a declaratory judgment claim if we have jurisdiction over the underlying cause of action. *See, e.g., Milberg v. Greenbaum*, 585 So. 2d 1089, 1090 (Fla. Dist. Ct. App. 1991) (reversing order denying motion to dismiss because no personal jurisdiction over claim that gave rise to the declaratory judgment claim).

### 1. *Florida Long-Arm Statute § 48.193(1)(a)*

Defendants allege that this Court does not have jurisdiction over Plaintiff eLandia's declaratory judgment claims because a forum selection clause without a separate basis for jurisdiction is insufficient to confer personal jurisdiction under § 48.193(1). [D.E. 17 at 11]. eLandia counters that the declaratory judgment claims include an independent basis for personal jurisdiction under § 48.193(1)(a) because its declaratory judgment claims arose from Defendants general course of business activity

27

in Florida. [D.E. 26 at 13]. Plaintiff contends that the following demonstrates that Defendants engaged in a general course of business: Defendants derived a pecuniary benefit from a Florida-based company under the Arrangement Agreement; traveled to Florida, sent phone calls and e-mails into Florida, had contacts with Florida during the negotiation of the Stock Purchase Agreements; and agreed to litigate in Florida. [*Id.* at 18-19].

On this point, we disagree with Plaintiff's conclusion. A defendant is subject to personal jurisdiction under Florida long-arm statute §48.193(1)(a) if the defendant carries on a business in Florida. *E.g., Horizon Aggressive Growth,* 421 F.3d at 1167. A plaintiff must show that the defendant engaged in a general course of business activity in the state for pecuniary benefit to satisfy § 48.193(1)(a). *Id.* The following factors are recognized to be relevant to show that an individual engages in a general course of business: presence and operation of an office in Florida; possession and maintenance of a license to do business in Florida; the number of Florida clients served; and the percentage of overall revenue gleaned from Florida clients.

The evidence that eLandia listed to show that Defendants engaged in a general course of business in Florida is woefully insufficient. eLandia has not shown that Defendants maintained a Florida office, were licensed to conduct business in Florida, or serviced a large number of Florida clients. *Id.* (rejecting plaintiff's argument that defendant's telephonic and electronic communications absent a Florida office or license to conduct business in Florida constitutes conducting business in Florida).

Furthermore, although eLandia claims that Defendants derived a pecuniary benefit from a Florida company, it does not show that the revenue gained from Defendants' Florida clients comprised a large percentage of Defendants' overall gross revenues. *See id.* (stating that defendants business with Florida clients, which accounted for less than five percent of defendant's gross revenue was insufficient to show general course of business). Therefore, Plaintiff's declaratory judgment claims are not subject to personal jurisdiction in Florida under § 48.193(1)(a).

## 2.  *Florida Long-Arm Statute §§ 685.101-102*

Plaintiff eLandia then argues that the forum selection clause alone confers personal jurisdiction over eLandia's declaratory judgment claims against Defendants James Ah Koy, Kelton, Datec Group, and Michael Ah Koy, as per Florida Statute §§ 685.101-102.  Personal jurisdiction exists under §§ 685.101-102 if a contract: includes a forum selection clause designating Florida law as the governing law; includes a provision whereby the non-resident agrees to submit to the jurisdiction of the Florida courts; involves consideration in excess of $250,000; and involves at least one party that is incorporated or has a place of business in Florida.  *Jetbroadband WV, LLC v. Mastec North America, Inc.*, 3D08-3057, 2009 WL 1606445, at *2 (Fla. Dist. Ct. App. June 10, 2009).

eLandia's principle place of business is in Florida.  In addition, the James Ah Koy Stock Purchase Agreement and the Michael Ah Koy Stock Purchase Agreement both include a forum selection clause that identifies Florida law as the governing law. Thus, the relevant issues here are (1) does the agreement satisfy the $250,000

consideration threshold and (2) did the named Defendant consent to the forum selection clause?

(a)      *Defendants James Ah Koy and Kelton*

Defendants James Ah Koy and Kelton sold their shares in eLandia to Stanford for $2,372,424 and consented to a forum selection clause, which identified Florida law as the governing law under the James Ah Koy Stock Purchase Agreement. [D.E. 26 at 11]. Therefore, Plaintiff's declaratory judgment claims against Defendants James Ah Koy and Kelton are clearly subject to personal jurisdiction in Florida under §§ 685.101-102. *See Steller Group, Inc. v. Mid-Ohio Mech., Inc.*, 3:03-cv-1057-J-20HTS, 2004 WL 5685570 (M.D. Fla. Jan. 28, 2004) (denying motion to dismiss for lack of personal jurisdiction because contract included a forum selection clause and satisfied the minimum dollar amount). These Defendants raise unpersuasive counter-arguments on this point, which we summarily reject.

(b)      *Defendant Michael Ah Koy*

Neither party disputes that Defendant Michael Ah Koy consented to the forum selection clause in the Michael Ah Koy Stock Purchase Agreement. [D.E. 44 at 8]. However, Michael Ah Koy argues that the forum selection clause alone cannot confer personal jurisdiction over him because the consideration for the Michael Ah Koy Stock Purchase Agreement is only $22,498. [*Id.*]. Plaintiff eLandia claims, however, that the Defendants incorrectly state that §§ 685.101-102 only allows for the transaction's cash consideration to satisfy the $250,000 threshold. [*Id.*]. eLandia contends that any contract in consideration of "or relating to" any obligation arising out of the transaction

30

can satisfy the $250,000 threshold. [*Id.*].  eLandia thus concludes that the Michael Ah

Koy Stock Purchase Agreement falls under §§ 685.101-102 because the forum selection

clause also included an agreement to release claims related to the Arrangement

Agreement, which is worth $14.6 million. [*Id.*].

We find Plaintiff's argument to have more merit.  We must first give effect to the

plain and ordinary meaning of § 685.101. *See State v. Sousa*, 903 So. 2d 923, 928 (Fla.

2005).  Section 685.101 states:

> The parties to any contract, agreement, or undertaking, contingent or
> otherwise, in consideration of *or relating to any obligation* arising out of
> a transaction involving in the aggregate not less than $250,000, the
> equivalent thereof in any foreign currency, or services or tangible or
> intangible property, or both, of equivalent value . . . may, to the extent
> permitted under the United States Constitution, agree that the law of
> this state will govern such contract, agreement, or undertaking, the effect
> thereof and their rights and duties thereunder, in whole or in part,
> whether or not such contract, agreement, or undertaking bears any
> relation to this state.

Fla. Stat. § 685.101 (2009) (emphasis added).

The drafters of the statute clearly provided that a transaction's cash

consideration is not the only means of satisfying the $250,000 threshold by including

the "or relating to any obligation" language. *See Taylor Woodrow Constr. Corp. v.*

*Burke Co.*, 606 So. 2d 1154, 1156 (Fla. 1992) ("Where the statutory provision is clear

and not unreasonable or illogical in its operation, the court [need] not go outside the

statute to give it a different meaning."). This language would indeed be superfluous if

the drafters of the statute intended to limit the application of § 685.101 to a

transaction's cash consideration, as the Defendants argue.  Moreover, the statute also

indicates that the threshold amount could be satisfied by "services or tangible or intangible property," which further shows that the drafters did not intend to limit the threshold amount to purely cash consideration.  Fla. Stat. § 685.101 (2009).

In addition, the relevant legislative history also buttresses our interpretation of the plain language meaning of § 685.101.  The Senate Staff Analysis and Economic Impact Statement of Bill 109 ("Statement") stated that the proposed Bill addresses the problem that arises when an element of a transaction includes a forum selection clause but also has a strong non-Florida component.  Senate Staff Analysis and Economic Impact Statement of Bill 109.  According to the Statement, the Legislature drafted Bill 109 to extend the ability of a forum selection clause to confer personal jurisdiction from transactions dealing with financial institutions located in Florida to contracts "arising out of a transaction *involving*" at least $250,000. *Id.* (emphasis added).  Moreover, the Statement specifically identifies the limits of Bill 109 by listing contracts that are excluded from the Bill's purview. *Id.* (emphasis added).  Hence, it appears that the Legislature intended to word the threshold criteria flexibly while identifying the outer limits of Bill 109's reach.

We find that cash consideration *or* an obligation related to the particular transaction can satisfy the threshold requirement in §§ 685.101-102.  The Michael Ah Koy Stock Purchase Agreement required Defendant Michael Ah Koy to release any claims related to the Arrangement Agreement, which was worth more than $250,000. [D.E. 44 at 8].  Therefore, we have personal jurisdiction over Plaintiff's declaratory judgement claim against him under §§685.101-102 because the Michael Ah Koy Stock

32

Purchase Agreement's related obligations meet the statutes's $250,000 threshold requirement.

       *(c)*      *Defendant Datec Group*

    Datec Group argues that the forum selection clause alone cannot confer personal jurisdiction over this foreign corporation because it never signed the Stock Purchase Agreement.  Yet eLandia claims that the Stock Purchase Agreement applies to Datec Group regardless, because Defendants James Ah Koy and Michael Ah Koy released all claims on behalf of themselves and their "affiliates," which includes Datec Group [D.E. 4 at 25]. The James Ah Koy and Michael Ah Koy Stock Purchase Agreements state that each Ah Koy Party, on behalf of himself or itself and all Affiliates hereby releases and discharges each Company from any and all claims. [D.E. Nos. 5-2 at 7, 5-3 at 6].  The term "affiliates" is defined under Rule 12b-2 of the Securities Exchange Act of 1934. [*Id.*].  Additionally, the Stock Purchase Agreements also state that the Ah Koy Parties have released any rights against the Company relating to the Arrangement Agreement. [D.E. Nos. 5-2 at 7, 5-3 at 7].

    We conclude that Datec Group is subject to the Stock Purchase Agreements' releases and forum selection clause because Datec Group is indeed an affiliate of James Ah Koy and Michael Ah Koy.  An affiliate is defined as a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the person specified under Rule 12b-2 of the Securities Exchange Act of 1934. 17 C.F.R. § 240.12b-2 (2009).  Control is defined as the possession of the power to direct or cause the direction of the management and policies of a person

33

through the ownership of voting securities. *Id.*  According to the record, Defendant James Ah Koy is the founder and director of Datec Group.  Moreover, Defendants James Ah Koy and Michael Ah Koy own a controlling share of Datec Group. [D.E. 4 at 3].  Therefore, Datec Group must be an affiliate of James Ah Koy and Michael Ah Koy as defined by Rule 12b-2 because both parties have the ability to direct the policies of the company through their ownership of voting securities. *Cf. S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996) (adopting 17 C.F.R. § 240.12b-2 standard for a Section 20(a) claim and noting that defendant controlled company because defendant was the president, chief executive officer, and sole shareholder).

As we have held that the forum selection clauses in the James Ah Koy and Michael Ah Koy Stock Purchase Agreements satisfy §§ 685.101-102, we must then conclude that we there is personal jurisdiction, for purposes of Florida's Long-Arm provisions, in this Court over Plaintiff's declaratory judgement claim against Datec Group.

### E.   *Breach of the Implied Covenant of Good Faith and Fair Dealing*

The contacts underlying Plaintiff's breach of the implied covenant of good faith and fair dealing claims against Defendants James Ah Koy, Kelton Investments, and Michael Ah Koy are duplicative of Plaintiff's declaratory judgment and breach of contract claims. We determined that we have personal jurisdiction over Plaintiff's declaratory judgment claims. Thus, we also have long-arm jurisdiction over Plaintiff's breach of the implied covenant of good faith and fair dealing claims.

34

### III.   ANALYSIS - FOURTEENTH AMENDMENT DUE PROCESS

If personal jurisdiction exists under the Florida long-arm statute, the Court must then determine whether personal jurisdiction satisfies the requirements of the Due Process Clause. *See, e.g., United Tech.,* 556 F.3d at 1275 ("A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists:  the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.").

The Due Process Clause protects an individual from being subject to a forum with which the individual does not have any meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1995).  The defendant's conduct and connection with the forum state have to be such "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  A defendant can reasonably anticipate being haled into court if the defendant purposefully availed herself of the privilege of conducting activities with the forum state.  *Burger King Corp.*, 471 U.S. at 472.  "This 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Licciardello,* 544 F.3d at 1284 (quoting *Keenan v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984) and *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)).

Hence, if the litigation arises out of or relates to the defendant's contact with the forum state then the defendant is subject to specific in personam jurisdiction. *Madara,* 916 F.2d at 1516 ("Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state.").

Finally, Due Process requires that exerting jurisdiction over a defendant does not violate traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). These factors include the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the judicial system's interest in efficiently resolving the dispute. *World-Wide Volkswagen,* 444 U.S. at 292. "Where these factors do not militate against otherwise permitted jurisdiction, the Constitution is not offended by its exercise." *Licciardello,* 544 F.3d at 1284 (citing *World-Wide Volkswagen,* 444 U.S. at 292).

### A.   *Intentional Tort Claims*

The Due Process analysis requires a "substantial connection" with the forum. Even a single act can give rise to such a connection to support the exercise of personal jurisdiction. *See, e.g., Burger King,* 471 U.S. at 475. It is thus well recognized that intentional torts are classic examples of such acts that give rise to jurisdiction over a non-resident defendant who has no other contacts with the forum state. *Licciardello,* 544 F.3d at 1285. The Eleventh Circuit indeed held in *Licciardello* that the

commission of an intentional tort by a non-resident defendant expressly aimed at a resident, the effects of which were suffered by the resident in the forum state, satisfies the "effects test" established by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). *Id.* at 1288. The "effects test" provides that due process is satisfied when the plaintiff brings suit in the forum here the "effects" or the brunt of the harm caused by the defendant's intentional tortious activity was suffered. *Id.* at 1285-87.

Consequently, the Due Process clause is not violated when a court exercises jurisdiction over a defendant's intentional tortious conduct, committed outside of the forum state but calculated to cause injury in the forum state, because the defendant must have reasonably anticipated being haled into court in the forum state regarding those actions. *See, e.g., Brennan v. The Roman Catholic Diocese of Syracuse, N.Y., Inc.,* 2009 WL 941765, at *4-5 (11th Cir. April 9, 2009) (vacating dismissal of action on jurisdictional grounds because [plaintiff] "was injured by the alleged intentional misconduct of the [defendant] in Florida, and Florida has a very strong interest in affording him a forum to obtain relief").

In this case, eLandia alleges that all Defendants committed intentional torts of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conspiracy to breach fiduciary duty, and tortious interference calculated to cause injury in Florida. The quality and nature of Defendants actions were not so "random, fortuitous, or attenuated" that Defendants could not have reasonably anticipated being haled into court in Florida. *See, e.g., Allerton,* 635 So. 2d at 39 (committing intentional torts of breach of fiduciary duty, aiding and abetting breach of fiduciary duty and conspiracy

37

are not random, fortuitous, or attenuated).  As discussed in the preceding section, the Defendants were, according to the complaint, knowingly interfering with eLandia's business relationships, and knowingly conspiring to violate fiduciary duties owed to eLandia in Florida.  The principals, James Ah Koy and Michael Ah Koy, entered into a long-standing and profitable business relationship with eLandia, through several contracts and agreements through which they materially benefitted.  They did so knowing that they had continuing obligations to eLandia, which obligations were breached when they tried to undermine eLandia's ability to sell Datec PNG.  Their alleged tortious activity caused injury to eLandia, a Florida corporation, and Defendants knew that that injury would be borne in the State of Florida.

Consequently, we readily conclude that these allegations, which we assume to be true for purposes of this motion to dismiss, amply satisfy the due process requirements necessary for personal jurisdiction over these Defendants in Florida.  The effects test is clearly met under these circumstances.  As a result, Florida has a strong interest in affording eLandia the relief it claims to be entitled to.

With respect to the intentional tort claims, we must also evaluate whether exercising jurisdiction would comport with "fair play and substantial justice" under the due process analysis.  We thus consider the burden on Defendants of litigating in Florida, Florida's interest in adjudicating the dispute, Plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute.  *E.g., Licciardello,* 544 F.3d at 1284.

We readily find that the Florida based Plaintiff, injured by intentional misconduct of Defendants expressly aimed at Florida, should not have to travel half a world away to obtain a remedy.  "Additionally, Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct by non-residents causing injury in Florida." *Id.*  And though the Defendants undoubtedly face a burden in litigating their alleged tortious activities in Florida, Defendants knowingly reached out to a Florida corporation over an extended period of time.  They indeed entered into various written agreements, directly or indirectly, that expressly incorporated Florida law and submitted to Florida jurisdiction.  They can hardly complain now that it is unfair or unjust for them to live up to those agreements.

### B.    *Remaining Claims*

Undeniably, the preceding analysis does not apply equally to all the claims in this complaint.  The remaining claims, which are primarily contractual in nature, will be addressed separately to determine if the minimum contacts test is satisfied.  For that purpose, we focus now on the well established principle that the minimum contacts analysis is met if a forum-selection clause exists that is "freely negotiated" and is not "unreasonable and unjust."  *Steller Group, Inc. v. Mid-Ohio Mech., Inc.*, 3:03-cv-1057-J-20HTS, 2004 WL 5685570 (M.D. Fla. Jan. 28, 2004) (citations omitted).  In such a case, the moving party must show that jurisdiction in the contractual forum will deprive the party from her day in court to demonstrate that a forum selection clause is unreasonable or unjust.  *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972).

Defendants here do not allege that the forum selection clauses in the Letter Agreement, Separation Agreement, or Stock Purchase Agreements were not freely negotiated. In fact, as the court noted in *Burger King*, Defendants are sophisticated business men who did not act under economic duress or disadvantage imposed by Plaintiff. *Burger King Corp.*, 471 U.S. at 484. Therefore, under *Bremen* it is constitutionally permissible to use the forum selection clauses to confer jurisdiction over Plaintiff's breach of contract, declaratory judgment, and breach of implied covenant of good faith and fair dealing. *See, e.g., Alexander Proudfoot Co. World Headquarters, L.P. v. Thayer*, 877 F.2d 912, 918 (11th Cir. 1989).

Defendants instead rehash the argument that the forum selection clauses cannot satisfy both the long-arm statute and due process requirements based on Florida law. Defendants point to the legislative history of Fla. Stat. §§ 685.101-102, which states "the bill excludes contracts in which the concerned parties do not have enough presence in the state (minimum contacts) as to allow the state to adjudicate a future contractual dispute." [D.E. 45 at 4]. Defendants argue that this language is unnecessary and redundant if the legislature intended to allow a forum selection clause to satisfy both the long-arm statute and due process requirements. [*Id.*].

We are quite unpersuaded by Defendants' argument. We note first that the Legislature did not include the above quoted language in the final version of §§ 685.101-102. Rather, the statute states that the parties may "to the extent permitted under the United States Constitution agree that the law of this state will govern such contract . . . ." Fla. Stat. § 685.101 (2009). The Legislature merely intended to include

40

the constitutional limitation that prevents an unfair or unjust forum selection clause from conferring personal jurisdiction under the long-arm statute.

Furthermore, as Plaintiff points out, Defendants ignore binding Eleventh Circuit precedent, which states:

> Because the nonresident defendant in the present case contractually agreed to personal jurisdiction in Florida, *the usual due process analysis need not be done.* As the Supreme Court noted in *Burger King,* the due process analysis is unnecessary where a nonresident defendant has consented to suit in a forum. Quite simply, "parties to a contract may agree in advance to submit to the jurisdiction of a given court." The enforcement of an agreement conferring jurisdiction does not offend due process where the provision is freely negotiated and not unreasonable or unjust.

*Alexander Proudfoot*, 877 F.2d at 918 (emphasis added). In other words, the Court's due process analysis is *not* dependent on the limitations found in Florida statutory law, even if they actually applied on these facts.

Even if we were persuaded by Defendants' position that additional contacts separate and apart from the forum selection clause must be present, we still find that the Plaintiff's breach of contract and declaratory judgment claims satisfy due process. If a defendant has created a continuing obligation between itself and residents of the forum, the defendant has availed itself of the privilege of conducting business in the forum. *See, e.g., Burger King Corp.*, 471 U.S. at 476. The court in *Burger King* determined that a forum selection clause along with the twenty year interdependent relationship appellee established with appellant's Miami Headquarters reinforced appellee's deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation. *Id.* at 482.

Similarly, we find that Defendants James Ah Koy, Michael Ah Koy, Kelton, and Datec Group's four-year continuing relationship with a Florida-based company for their own gain sufficiently bolsters the forum selection clause to put Defendants on notice of the possibility of litigation in Florida. *Id.* at 479 (evaluating the prior negotiations, contemplated future consequences, terms of the contract, and the parties course of dealing to determine whether appellee's purposefully established minimum contacts with Florida).

First, Michael Ah Koy contracted with Plaintiff to provide consulting services to and receive payment from a Florida corporation under the Letter Agreement. [D.E. 41-5 at 2]. Second, James Ah Koy and Michael Ah Koy were officers and directors of a Florida based company. [D.E. 22-2 at 4]. Third, James Ah Koy, Michael Ah Koy, and Kelton traveled to and from Florida to negotiate the Arrangement Agreement. [D.E. 26 at 18-19]. Fourth, James Ah Koy, Michael Ah Koy, and Datec Group directed numerous e-mail and telephone communications to Florida. [D.E. 22-2 at 3]. Fifth, James Ah Koy, Michael Ah Koy, and Kelton acquired 31% of the voting share capital in a Florida-based company under the Arrangement Agreement. Sixth, James Ah Koy, Michael Ah Koy, and Kelton further continued their relationship with the Florida based company by entering into the Stock Purchase Agreement and receiving over $2 million from the Florida-based company. [D.E. 5-2]. Combined, these are more than sufficient minimum contacts with the forum state – Florida – to exercise specific jurisdiction over contractual and declaratory judgment claims that arise from and relate to these contacts.

We also conclude that exerting jurisdiction over Plaintiff's breach of contract and declaratory judgment claims also comports with traditional notions of fair play and substantial justice. *See Burger King Corp.*, 471 U.S. at 487 (finding jurisdiction under a freely negotiated forum selection clause to be fair and just). Defendants have not demonstrated how jurisdiction in Florida would otherwise be fundamentally unfair. Defendants have traveled to and from Florida on numerous occasions; subjecting Defendants to litigation in Florida that relate to those contacts is is not unduly burdensome. Obviously Florida has a strong interest in providing its residents with a forum to obtain relief under the circumstances. In a nutshell, Defendants established a substantial and continuing relationship with Florida and received fair notice from the contract documents and course of dealing that they might be subject to suit in Florida.

Finally, the Eleventh Circuit follows the doctrine of pendent personal jurisdiction. "If the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction generating event." *Brennan,* 2009 WL 941765, at *1; *see also Exhibit Icons, LLC v. XP Co., LLC*, 609 F. Supp. 2d 1282, 1288 (S.D. Fla. 2009) (if personal jurisdiction is found over tort claims there is also personal jurisdiction over contract-related claims that arise from a common nucleus of fact under the doctrine of pendent personal jurisdiction). Plaintiff eLandia's intentional tort claims, breach of contract claims, declaratory judgment claims, and breach of implied covenant of good faith and fair dealings claims all arise from a common nucleus of fact: Defendants'

attempts to block the Steamships transaction.  Consequently, although we have now found jurisdiction to exist over all of Plaintiff eLandia's claims, we could have ended our inquiry after first finding personal jurisdiction over Plaintiff's intentional tort claims.  Therefore, on this basis as well the court has personal jurisdiction to adjudicate the tort and the contract claims alleged in this complaint.

### IV.   CONCLUSION & RECOMMENDATION

For the reasons fully set forth above, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [D.E. 17] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal any factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 24th day of August, 2009.

/s/   *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

44