UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-20588-Civ-MORENO/TORRES

ELANDIA INTERNATIONAL, INC.,

       Plaintiff,

vs.

JAMES AH KOY, *et al.*,

       Defendants
_____/

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter comes before the Court on Defendants Sir James Ah Koy, Michael Ah Koy, Kelton Investments Ltd., and Datec Group Ltd.'s ("Defendants") Motion for Partial Summary Judgment on Plaintiff's Claims for Lack of Standing pursuant to Rules 17 and 56 of the Federal Rules of Civil Procedure [D.E. 68] (hereinafter "Motion"). Plaintiff eLandia International Inc. ("eLandia") has filed a Memorandum of Law in Opposition to Defendants' Motion [D.E. 72] (hereinafter "Opposition"). Defendants have filed a Reply to Plaintiff's Opposition [D.E. 75] (hereinafter "Reply"). For the following reasons, Defendants' Motion should be Granted in part and Denied in part.

## I.  BACKGROUND

The following basic background facts are taken from Plaintiff's Second Amended Complaint ("SAC") and the parties' filings of record.[1]  Plaintiff eLandia is a corporation organized under the laws of Delaware with its principal place of business in Coral Gables, Florida.  eLandia provides information technology services to businesses and government entities located in the South Pacific through several subsidiaries located in that region.  Stanford International Bank ("Stanford") is a banking corporation that is not a party to this action.  Until February 2009, Stanford was a major shareholder of Plaintiff eLandia and principle source of eLandia's financing for operations.

Defendant James Ah Koy is a citizen of Suva, Fiji, but resides in Beijing, China.  Defendant Michael Ah Koy is a citizen and resident of Mairangi Bay, Auckland, New Zealand.  Defendant Kelton is an investment holding company.  Kelton's principal place of business and place of incorporation is located in Fiji.  Michael Ah Koy is a shareholder and chairman of Kelton.  Defendant James Ah Koy controls Kelton.

Defendant Datec Group's principal place of business and place of incorporation is located in Canada.  Kelton held 30% of Datec Group's outstanding common stock.  Michael Ah Koy was the chief executive officer of Datec Group until 2004.  James Ah Koy was the director and founder of Datec Group.  James Ah Koy and Michael Ah Koy

---

[1]  The facts in this case are numerous and involve many parties.  At current stage, the burden is on the party moving for summary judgment to demonstrate, with respect to the matters and basis on which they seek judgment, that they are entitled to judgment as a matter of law.  Therefore, our statement of background facts gleaned from the parties' pleadings and filings is for background purposes and is not intended as to complete statement of undisputed facts.  The parties' position with respect to the materials facts, if relevant to the pending motion, will be addressed in the pertinent analysis section below.

control Datec Group, either directly or indirectly. Datec Group was an information technology company that provided services to the South Pacific markets. Before February 1, 2006, Datec Group conducted its operations under the following wholly-owned subsidiaries: (1) Generic Technology Ltd. ("Generic"), a Fiji registered company; and (2) Datec Investments Ltd., a New Zealand registered company. Generic owns Datec PNG Pty Ltd ("Datec PNG"), a company which is registered in Papua New Guinea.[2, 3]

eLandia, James Ah Koy, Michael Ah Koy, and several Datec Group representatives attended a two-day meeting in Florida to begin negotiations in the summer of 2005 to merge the assets of eLandia and Datec Group. As a result of these negotiations, eLandia entered into an Amended and Restated Arrangement Agreement ("Arrangement Agreement") with Defendants Datec Group, James Ah Koy, Michael Ah Koy, and Kelton on or about August 8, 2005. eLandia exchanged 31% of its issued and voting share capital for all of Datec Group's operating subsidiaries, specifically Generic Technology Limited ("Generic") and Datec PNG. The Arrangement Agreement was governed by Canadian law and subject to the approval of the Canadian courts and

---

[2] Generic also owns (1) Datec Fiji Ltd., a company registered in Fiji; (2) Network Services Ltd., a company registered in Fiji; (3) Pacific Software Ltd., a company registered in Fiji; and, (4) Datec Qld Pty Ltd., a company registered in Australia. Datec Investments Ltd. owns the following subsidiaries: (1) Datec Samoa Ltd., a company registered in Samoa; (2) Datec Tonga Ltd., a company registered in the Kingdom of Tonga; (3) Datec Vanuatu Ltd., a company registered in Vanuatu; (4) Datec Solomon Islands Ltd., a company registered in the Solomon Islands; and (5) Datec Australia Ltd., a company registered in Australia.

[3] Steamships, a nonparty to this litigation that is not related to eLandia, owned 50% of Datec (PNG).

Datec Group shareholders. The value of the transaction was approximately $14.6 million and closed in Florida on or about February 1, 2006.

Datec Group became a shell corporation that lacked business and assets following the Arrangement Agreement. Moreover, Canadian securities regulators prohibited trading in Datec Group's stock and the United States Securities and Exchange Commission revoked Datec Group's registration because Datec Group did not file the required reports.

Following the Arrangement Agreement, James Ah Koy served as a director of eLandia from December 2005 until April 2009. Shortly after closing the Arrangement Agreement, James Ah Koy claimed that eLandia did not provide the promised capital for the South Pacific Datec subsidiaries. According to Plaintiff, James Ah Koy made these complaints in several venues, including an eLandia Board meeting James Ah Koy attended in Florida.

Michael Ah Koy served as eLandia's President of Business Development from February 2006 until July 2008.[4] He also managed and developed business opportunities in the information technology area in the South Pacific. On July 19, 2008, Michael Ah Koy was appointed as a director of eLandia's South Pacific subsidiaries Generic, Datec Investments Limited and Datec PNG.

On April 30, 2008, James Ah Koy and Kelton sold a portion of their eLandia stock to Stanford for $2,372,424 under the James Ah Koy Stock Purchase Agreement.

---

[4] Michael Ah Koy also served as eLandia's interim CEO from July 2006 until late 2006.

On that same date, Michael Ah Koy also sold a portion of his stock to Stanford for $22,498 under the Michael Ah Koy Stock Purchase Agreement.

In January 2009, Stanford informed eLandia that it would no longer provide financing to eLandia, which violated a credit agreement between the parties. Stanford claimed that it no longer had liquidity available to honor its commitment under the credit agreement. Therefore, eLandia negotiated an agreement with Stanford that terminated Stanford's obligations under the credit agreement, converted eLandia's outstanding debt to Stanford to preferred stock, Stanford's ownership of eLandia's common stock would be reduced from approximately 80% to 49.9%, and all of Stanford's capital stock would be placed in a voting trust that eLandia's CEO would vote on at the CEO's discretion.

Shortly thereafter, the SEC filed a complaint alleging that Stanford misrepresented the safety and liquidity of the underlying investments in certificates of deposits that Stanford fraudulently sold. Stanford had been eLandia's principal lender, thus eLandia sought to sell a portion of its assets to gain additional liquidity. Michael Ah Koy told eLandia's representatives that he knew a group of companies that were interested in forming a consortium to acquire some of eLandia's assets. eLandia agreed to pay Michael Ah Koy a fee to facilitate the sale for a period of six months. eLandia reserved the right to sell its assets to any other buyer, in which case Michael Ah Koy would not receive a fee.

According to SAC, in February 2009, eLandia negotiated an offer to sell its 50% interest in Datec PNG to Steamships for approximately $7.5 million cash. eLandia's Board of Directors considered and approved the proposed sale to Steamships. James

Ah Koy did not attend this meeting, but eLandia's CEO informed James Ah Koy about the pending transaction and asked him to execute a release and resignation from Datec PNG's Board to allow the closing to proceed.

On February 16, 2009, Michael Ah Koy sent an e-mail to eLandia's CEO, proposing to purchase Generic Technology and Datec Australia Ltd for $10,000,000. $6,352,000 of the consideration was to be paid in eLandia stock, $500,000 cash would be paid at closing, $1,000,000 to be paid 90 days after closing, and $2.148 million to be paid 180 days after that. eLandia rejected the offer. On the same day, James Ah Koy also e-mailed eLandia's CEO stating that he would have to put a halt on the transaction with Steamships by refusing to execute the necessary closing documents.

Steamships and eLandia planned on closing the sale of eLandia's interest in Datec PNG at a Datec PNG board meeting in Papua, New Guinea on February 17, 2009. On February 17, 2009, Michael Ah Koy told a Steamships representative that he intended to block eLandia's transaction with Steamships. Consequently, Steamships refused to close the transaction.

On February 24, 2009, Kelton and Datec Group filed an Ex-Parte Notice of Motion for Interim Injunction in Fiji ("Fiji Litigation") seeking to: (1) block Plaintiff eLandia from appointing new directors or removing existing directors from the Board of Generic and its subsidiaries, including Datec PNG; and (2) prevent eLandia from selling its shares in Generic and/or in any of its subsidiaries.

Following the initiation of the Fiji Litigation, on March 9, 2009, eLandia brought this action in part to first seek an anti-suit injunction barring the Defendants from pursuing or prosecuting the Fiji litigation.

The eleven-count SAC alleges the following: 1) Defendant James Ah Koy committed breach of fiduciary duty, conspiracy to breach fiduciary duty, breach of implied covenant of good faith and fair dealing, and tortious interference; (2) Defendant Michael Ah Koy committed aiding and abetting breach of fiduciary duty, conspiracy to breach fiduciary duty, breach of implied covenant of good faith and fair dealing, tortious interference, and breach of contract; (3) Defendant Datec Group Ltd. ("Datec Group") committed aiding and abetting breach of fiduciary duty, conspiracy to breach fiduciary duty, and tortious interference; and (4) Defendant Kelton Investments Ltd. ("Kelton") committed aiding and abetting breach of fiduciary duty, conspiracy to breach fiduciary duty, breach of the implied covenant of good faith and fair dealing, and tortious interference.

Defendants now move for a judgment as a matter of law on Counts I (breach of fiduciary duty claim against James Ah Koy), II (aiding and abetting breach of fiduciary duty claim against Michael Ah Koy, Kelton and Datec Group), III (conspiracy to breach fiduciary duty claim against James Ah Koy, Michael Ah Koy, Kelton and Datec Group), VI (breach of the implied covenant of good faith and fair dealing claim against James Ah Koy and Kelton), VII (breach of the implied covenant of good faith and fair dealing claim against Michael Ah Koy), X (breach of contract regarding the Letter Agreement against Michael Ah Koy), and XI (tortious interference with business relations claims against all Defendants). In support of its Motion, Defendants contend that eLandia lacks standing to bring these claims because it is not the real party in interest. In other words, Defendants argue that Plaintiff is seeking to recover damages based on losses suffered by its indirectly owned subsidiary rather than damages based on its

own direct losses. Although somewhat unclear, Defendants are only challenging eLandia's constitutional standing and whether eLandia is the "real party in interest" under Fed. R. Civ. P. 17. It is important to note that Defendants are not substantively challenging Plaintiff's claims.

## II. ANALYSIS

### A. *Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden is met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

B.      *Standing and Real Party in Interest*

Litigants in federal court must have standing in order to be able to bring a claim. *Fed. Deposit Ins. Corp. v. Morley*, 867 F.2d 1381, 1386 (11th Cir. 1989) (citing *Valley Forge Christian College v. Am. United for Separation of Church and State*, 454 U.S. 464, 471 (1982)). A party who wishes to bring a complaint must satisfy a two-part standing test consisting of a constitutional component and prudential considerations. *Id*. at 1386. To fulfill the constitutional component, the plaintiff must show three elements: 1) that he has suffered an actual injury or shows such an injury is imminent; 2) that the injury is fairly traceable to the challenged conduct of the defendant; and 3) a favorable decision will redress the party's injury. *Id*. Next, the plaintiff must demonstrate that prudential considerations do not preclude a court from hearing the claim. *Id*. Courts recognize three prudential factors that prevent the case from being heard: 1) assertion of a third party's rights rather than individual legal rights; 2) allegation of a generalized grievance rather than an injury peculiar to such litigant; and 3) assertion of an injury outside the statute's or constitutional provision's zone of interest. *Id*.

Additionally, all federal actions must be prosecuted in the name of the real party in interest. Fed. R. Civ. P. 17(a). The rule requires that the party who brings the action is "the party who, by the substantive law, has the right sought to be enforced." *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 257 (5th Cir. 1980). The purpose of the real party in interest rule is to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally

that the judgment will have its proper *res judicata* effect. *Steger v. General Electric Co.*, 318 F.3d 1066, 1080 (11th Cir. 2003) (citing Rule 17 advisory committee notes (1966)). Unlike standing, a real party in interest defense is not jurisdictional, and because it is intended to benefit the defendant, it is freely waivable. *Id.* In addition, the Eleventh Circuit has held that a district court "does not exceed its power when it takes jurisdiction over controversy, even if not brought by the real party in interest, as long as there exists a substantial identity of interest between the original plaintiff and the true party in interest, and as long as the pleadings set forth the facts upon which the real party in interest would base its invocation of the court's jurisdiction in its own right." *Delta Coal Program v. Libman*, 743 F.2d 852, 856 (11th Cir. 1984).

There is a distinction between a party's standing to sue under Article III and his "standing" to prosecute a claim as the real party in interest pursuant to Rule 17(a). *See, e.g., Live Entertainment, Inc. v. Digex, Inc.*, 300 F. Supp. 2d 1273, 1277 (S.D. Fla. 2003) ("There is a distinction between questions of Article III standing and Rule 17(a) real party in interest status."); *Gonzalez ex. rel. Gonzalez v. Reno*, 86 F. Supp. 2d 1167, 1182 (S.D. Fla. 2000) ("[t]he concepts of a plaintiff's standing to sue and his status as the real party in interest are interrelated, yet conceptually distinct."). "Standing is similar to the real party in interest rule inasmuch as both terms are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits." 6A Wright & Miller, *Federal Practice and Procedure* § 1542 (Supp. 2009); *see also Gonzalez*, 86 F. Supp. 2d at 1182 n.18 (noting that the real party in interest and Article III standing questions are similar, and that the "notable

distinctions are somewhat academic"). Nonetheless, some courts, however, have described Rule 17's real party in interest requirement as essentially a codification of the non-constitutional prudential limitation on standing. *See, e.g., Warnick v. Yassian (In re Rodeo Canon Dev. Corp.)*, 362 F.3d 603, 607-08 (9th Cir. 2004), *withdrawn and superseded on other grounds*, 126 Fed. Appx. 353 (9th Cir. 2005); *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 319-20 (5th Cir. 1999) (holding that so long as the plaintiff satisfies constitutional standing requirements, the Rule 17(a) limitation is prudential rather than consitutional).

### 1. *Breach of Fiduciary Duty and Contract Claims*

The Eleventh Circuit has applied the prudential standing considerations to hold that a shareholder does not have standing to assert a claim of a corporation, unless the shareholder shows that a duty was owed directly and independently to him. *See KMS Restaurant Corp. v. Wendy's International, Inc.*, 361 F.3d 1321, 1324 (11th Cir. 2004); *Citibank, N.A. v. Data Lease Fin. Corp.*, 828 F.2d 686, 694 n.11 (11th Cir. 1987).

Under Delaware law, an injury done to a parent company's subsidiary "does not create a claim that may be asserted in a direct action by the subsidiary's parent corporation because the claim is the property of the subsidiary, not the parent." *Case Fin., Inc. v. Alden*, No. 1184-VCP, 2009 WL 2581873, at *7 (Del. Ch. Aug. 21, 2009).[5] However, a parent company has standing to sue an employee of a wholly-owned

---

[5] Although the parties have not engaged in an in-depth choice-of-law analysis, it appears that Delaware law applies to the breach of fiduciary duty claims because eLandia was incorporated in Delaware. *Mukamai v. Bakes*, 383 B.R. 798, 817 (S.D. Fla. 2007). On the other hand, Florida law applies to the contractual claims under the choice-of-law provisions of the applicable contracts.

subsidiary company for the employee's alleged breaches of fiduciary duty that directly caused the parent company harm, if that employee was a director of the parent company, and thus owed fiduciary duties to that company. *See, e.g., Miller v. U.S. Foodservice, Inc.*, 361 F. Supp. 2d 470, 476 (D. Md. 2005) (applying Delaware law).

In *Miller*, for example, a parent company and its subsidiary countersued the subsidiary's former president, who was a director of both companies, for breach of fiduciary duty associated with accounting irregularities at the subsidiary. *Id*. The former president and director challenged the parent's standing to sue, arguing that, as a shareholder of subsidiary, the parent lacked the capacity to bring the claim. *Id*. The court disagreed, finding that the former president and director owed separate fiduciary duties to each company, and therefore, the parent had standing to sue for breaches that directly caused it harm. *Id*. (citing *In re Digex*, 789 A.2d 1176, 1206 (Del. Ch. 2000)).

Likewise, Florida law permits a party to a shareholder's agreement to sue individually for its breach. *See, e.g., Harrington v. Batchelor*, 781 So. 2d 1133, 1135 (Fla. 3d DCA 2001). Hence, in *Harrington*, the court concluded that shareholder was entitled to file an individual action to recover for injuries that stemmed from a breach of a contractual duty the wrongdoer directly owed the shareholder. *Id*. The court reasoned that "where the wrongful acts are not only wrongs against the corporation but are also violations by the wrongdoer of a duty arising from contract or otherwise, and owing directly to the shareholders, individual shareholders can sue in their own right." *Id*.

Here, it is undisputed that Plaintiff did not own any interest in Datec PNG or Datec Fiji. Instead, 100% of Datec Fiji and a 50% interest in Datec PNG were owned by Generic, an indirect subsidiary of eLandia. Nonetheless, Plaintiff's breach of fiduciary duty and breach of contract claims do not directly arise from its ownership interest in Generic. Instead, its claims stem from legal duties owed directly to eLandia. At this point, Plaintiff has proffered evidence that Defendant James Ah Koy was a director of eLandia. As a director, he owed fiduciary duties to eLandia. Likewise, Plaintiff's contractual claims stem from the Purchase Agreement executed between eLandia and James Ah Koy.

We conclude, therefore, that eLandia has standing and is the real party in interest to bring claims against Defendants that are based on the alleged breach of fiduciary and contractual duties owed to eLandia. Defendants' Motion for Summary Judgment on Counts I-III, VI-VII, and X due to lack of standing and Rule 17 should be denied.

### 2. *Tortious Interference with Business Relations*

Plaintiff contends that eLandia had entered into a business relationship with Steamships, that defendants knew of and tortiously interfered with that relationship when Defendants attempted to thwart the sale of Datec (PNG), and that eLandia suffered direct damages as a result. Therefore, eLandia argues that, because it was a party to the Steamships transaction with which the Defendants interfered, it is a real party in interest to bring this claim.

As previously noted, it is axiomatic that a plaintiff "generally must assert his own legal rights and cannot rest his claim to relief on a legal rights or interests of third

parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Thus, under the shareholder rule, a shareholder does not have standing to enforce the rights of a corporation, except when the shareholder also has a direct, personal interest in the cause of action. *USA Interactive v. Dow Lohnes & Albertson, P.L.L.C.*, 328 F. Supp. 2d 1294, 1309 (M.D. Fla. 2004) (citing *Franchise Tax Bd. of Calif. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990)); *see also Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750 (7th Cir. 2008) (affirming trial court's dismissal and holding that the shareholder-standing rule prevented the corporation's sole shareholder, officer, and director from pursuing a claim under the Petroleum Marketing Practices Act (PMPA) against a franchisor because the shareholder did not have a direct, personal injury independent of the derivative injury of the shareholders generally making the corporation itself the real party in interest and not the shareholder). In other words, a corporation does not have standing to assert claims belonging to a related or closely affiliated corporation simply because their businesses are intertwined. *See, e.g., 24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F. Supp. 2d 305, 314-15 (S.D.N.Y. 2008); *R & B Realty Group v. Heiser*, 322 F. Supp. 2d 206, 210 (D. Conn. 2004).

Here, it is undisputed that eLandia did not own any direct ownership interest in Datec (PNG). *See* Pl.'s Statement of Material Facts in Opp'n ¶ 6 [D.E. 71]. Instead, Generic directly owned Datec (PNG). *Id*. eLandia owns Generic through a chain of other subsidiaries. *Id*. These undisputed facts combined with the factual allegations listed in the SAC, which we will construe as true for the purposes of this motion, indicate that the tortious interference claim belongs to Generic and not eLandia. As

Judge Moody points out, "it seems inequitable to allow [a parent company] to consciously cloak itself in the corporate veil as a shield to the liabilities of its subsidiaries only to allow it to voluntarily disregard the separateness when it serves its interest." *USA Interactive*, 328 F. Supp. 2d at 1310-11.

Where the directors and officers of one company decided to incorporate a separate company, whatever the motive, they become "bound by the disadvantages as well as the advantages of separate incorporation." *Diesel Sys., Ltd. v. Yip Shing Diesel Eng'g Co., Ltd.*, 861 F. Supp. 179, 181 (E.D.N.Y. 1994). Thus, while one company may be merely a shell corporation, wholly controlled by another, "[a] corporation may not pierce the veil of another corporation that it set up for its own benefit in order to advance the claims of that corporation." *Id*. It is well established that "where the business or property allegedly interfered with by forbidden practices is that being done and carried by a corporation, it is that corporation alone . . . who has a right of recovery, even though in an economic sense[ ] real harm may well be sustained [by other entities as a result] . . . of such acts." *Martens v. Barrett*, 245 F.2d 844, 846 (5th Cir. 1957).

For example, in *Diesel*, a New York corporation DSL-NY brought a diversity action against a certain foreign company. *Diesel*, 861 F. Supp. at 180. Both parties were involved in the business of distributing generator sets to the Peoples Republic of China. *Id*. In its complaint, DSL-NY alleged that defendant has tortiously interfered with certain distribution agreements DSL-NY had with various third parties. *Id*. Defendant moved to dismissed the complaint claiming that DSL-NY was neither a real

party in interest nor had standing to bring the tortious interference claim. *Id*. at 180. The court agreed and granted the motion after concluding that DSL-NY was not a party to the distribution agreement. *Id*. The court emphasized that the distribution agreement was between DSL-NY's sister corporation called DSL-HK and the third parties. *Id*. The court rejected plaintiff's arguments that DSL-HK was formed solely to protect the DSL trade name in Hong Kong, that DSL-HK never maintained its own corporate books or records and never had any accounting done on its own behalf, and that it was DSL-NY, not DSL-HK, who collected payment from downline purchases such as the defendant. *Id*. at 181. Instead, the court pointed out that DSL-NY was a legal stranger to the contract and business relations that were allegedly interfered with" and it was DSL-HK who was "the actual party to the contract and the entity engaged in trade with the third party suppliers." *Id*.

The court's analysis in *Diesel* similarly applies here. It is undisputed that Generic, not eLandia, owned interest in Datec (PNG). Therefore, only Generic could possibly maintain that they possessed a business relationship with Steamships in connection with the sale of its interest in Datec (PNG). As such, eLandia is legally a stranger to the Generic-Steamships transaction, despite the fact that it may very well have been substantially involved in the negotiation and closing of the deal. Accordingly, we conclude that eLandia does not have prudential standing and is not the real party in interest to assert the tortious interference claim against Defendants.[6]

---

[6] Although Plaintiff in its response appears to seek leave from the Court to amend its complaint in order to add Generic as the proper party, it is not clear why such a relief should be granted at this late stage in the litigation, some three months after Scheduling Order's deadline of November 19, 2009 to add parties or amend

### *III.   CONCLUSION & RECOMMENDATION*

For the reasons fully set forth above, it is hereby **RECOMMENDED** that Defendants' Motion for Partial Summary Judgment on Plaintiff's Claims for Lack of Standing pursuant to Rules 17 and 56 of the Federal Rules of Civil Procedure [D.E. 68] be **GRANTED** in part and **DENIED** in part.

1.   Motion for Summary Judgment on Counts I-III, VI-VII, and X should **DENIED**.

2.   Motion for Summary Judgment on Count XI should be **GRANTED** and a summary judgment should be entered against Plaintiff eLandia and in favor of Defendants on Count XI tortious interference claim.

Pursuant to Local Magistrate Rule 4(b), the parties have ten days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal any factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

---

pleadings.  *See* Scheduling Order at 1 [D.E.70].  Nonetheless, we need not reach the merits of this issue because it was not properly raised before the Court by way of motion to amend.

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 22d day of February, 2010.

                                                      /s/   *Edwin G. Torres*
                                                      EDWIN G. TORRES
                                                      United States Magistrate Judge